UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUROK TRIBE, et al., <br> Plaintiffs, <br> v. <br> UNITED STATES BUREAU OF RECLAMATION, et al., <br> Defendants. | Case No. 16-cv-06863-WHO <br><br> **ORDER DENYING MOTION FOR RELIEF FROM THE JUDGMENT AND CLARIFYING INJUNCTION ORDERS** <br><br> Re: Dkt. Nos. 101, 107 |

## INTRODUCTION

On March 24, 2017, I issued permanent injunctions in two related cases, *Hoopa Valley Tribe v. Bureau of Reclamation*, No. 16-cv-4294, and *Yurok Tribe v. Bureau of Reclamation*, No. 16-cv-6863. *See* Hoopa Dkt. No. 111; Yurok Dkt. No. 70. The injunctions ordered the United States Bureau of Reclamation (the "Bureau") to require certain types of water flows as part of their operation of the Klamath River Project in order to prevent irreparable harm to the SONCC Coho salmon, an endangered species. The plaintiffs in those two cases are two federally protected Klamath Basin Tribes, the Hoopa Valley Tribe and the Yurok Tribe, whose cultural heritage and economic wellbeing revolve around the salmon's health, as well as the Pacific Coast Federation of Fishermen's Associations, Institute for Fisheries Resources, and Klamath Riverkeeper. Certain organizations and persons interested in the Klamath River Project, namely, the Klamath Water Users Association, Sunnyside Irrigation District, Ben DuVal, Klamath Drainage District, Klamath Irrigation District, and Pine Grove Irrigation District (together, "intervenors") intervened in both cases on the side of the Bureau and the National Marine Fisheries Service ("NMFS," and together with the Bureau, "federal defendants"), advocating the interests of ranchers and farmers in receiving needed water for their livelihoods. While all of the parties present important equitable

concerns, I issued the injunctions because the law demands that endangered species are entitled to primary protection. Both federal defendants and intervenors filed timely notices of appeal in the two cases.

Water year 2017 resulted in favorable conditions in the Klamath River, while water year 2018 has been significantly drier. On March 7, 2018, intervenors moved for relief from the judgment, or, in the alternative, a stay of enforcement of the injunctions, arguing that the application of the injunctions to water year 2018 is both unnecessary and inequitable due to new information not available at the time that the injunctions were issued. Federal defendants do not join in intervenors' motion, but respond separately that they believe that full compliance with the injunctions is not possible as a result of the drier hydrological conditions, and propose a new plan. Plaintiffs oppose both intervenors' motion and federal defendants' proposal.

Given the pendency of the appeal, my jurisdiction is limited. Pursuant to Federal Rule of Civil Procedure 62.1, I consider the merits of intervenors' motion and DENY it because they do not show newly discovered evidence sufficient to justify suspending or modifying the injunctions pursuant to Rule 60(b)(2), nor that prospective application of the injunctions would be inequitable pursuant to Rule 60(b)(5). Staying enforcement would not preserve the status quo, and I do not have jurisdiction to grant their requested stay while the appeal is pending. Nor would I in light of the evidence of record. With respect to federal defendants' proposed plan, I clarify federal defendants' obligations under the injunctions—partial compliance with Measure 4 is necessary in the event that full compliance is not possible. And I again urge that the able scientists who are working on this issue attempt to reach consensus on whether the best available science has changed since issuance of the 2013 Biological Opinion to the extent that the injunctions should be modified prior to water year 2019.[1]

**BACKGROUND**

This proceeding involves the permanent injunctions issued in two related cases, *Hoopa Valley Tribe v. Bureau of Reclamation*, No. 16-cv-4294 (filed July 29, 2016), and *Yurok Tribe v.*

---

[1] An identical version of this Order is filed in *Hoopa Valley Tribe v. Bureau of Reclamation*, No. 16-cv-4294.

2

*Bureau of Reclamation*, No. 16-cv-6863 (filed November 29, 2016). Plaintiffs in both cases brought suit in 2016 after the Bureau's 2014 and 2015 operation of the Klamath River Project[2] resulted in significant exceedances of *C. shasta* disease rate standards among Coho salmon, which are listed as threatened under the Endangered Species Act ("ESA"). These exceedances triggered the federal defendants' obligation to reinitiate formal consultation and prepare a new Biological Opinion for the Klamath River Project; they failed to do so. Intervenors, who are interested in the action due to the effects of the Klamath River Project on the irrigation districts that depend on it for water, intervened on the side of the federal defendants. *See* Hoopa Dkt. Nos. 30, 72; Yurok Dkt. No. 46.

On November 30 and December 1, 2016, plaintiffs in the two cases moved for summary judgment on the failure to reinitiate claims and for permanent injunctions. The permanent injunctions requested implementation of certain guidance measures based on a draft document titled, "Measures to Reduce *Ceratanova shasta* Infections of Klamath River Salmonids: A Guidance Document," drafted by plaintiffs based on four technical memoranda prepared by the United States Fish and Wildlife Service ("FWS"). The federal defendants and intervenors opposed on several grounds, including intervenors' argument that an evidentiary hearing was necessary in order to resolve factual disputes on whether injunctive relief was necessary to prevent irreparable harm to the Coho salmon or would cause harm to other endangered species.

I heard oral argument on January 27, 2017. Because the Bureau needed to make certain irrigation allocation decisions on or around April 1, 2017, and prevention flows might have been needed sooner than that, plaintiffs requested a decision by mid-February 2017. Based on the record, including the draft (and later final) guidance document, I granted summary judgment for plaintiffs on the reinitiation claim and issued the permanent injunctions on February 8, 2017. *See* Hoopa Dkt. No. 102; Yurok Dkt. No. 62 (together, "Injunction Orders"). I denied intervenors' request for an evidentiary hearing because many of intervenors' arguments were irrelevant to whether an injunction against the Klamath Project was warranted. *See* Injunction Orders at 51.

---

[2] The Klamath River Project is located on the Oregon/California border in Oregon's Klamath County and California's Siskiyou and Modoc Counties.

Plaintiffs' requested relief was based on the best available science and, given the threat of imminent harm to the endangered Coho salmon, waiting for "perfect" science was not appropriate. *Id.* at 51–52. The Injunction Orders directed the parties to confer and submit a more detailed proposed order in accordance with the best available science that met the parameters set in the Injunction Orders. Based on that submission, I modified the injunction orders on March 24, 2017. *See* Hoopa Dkt. No. 111; Yurok Dkt. No. 70 (together, "Modified Injunction Orders").

Among other things, the Modified Injunction Orders adopted certain Management Guidance Measures from the final Guidance Document, including Measures 1 and 4. Measure 1 requires the Bureau to release annual winter-spring surface flushing flows, and Measure 4 requires the Bureau to release emergency dilution flows and establish a 50,000 acre foot ("50 TAF") reserve water supply to supplement those flows. *See* Modified Injunction Orders at ¶¶ 4, 6, 10–12. In recognition that the endangered sucker fish[3] that inhabit the Upper Klamath Lake could be affected by the proceedings, the Modified Injunction Orders specifically tasked the Bureau with managing "the Klamath Reclamation Project ("Project"), including Project deliveries from the upper Klamath Lake ("UKL"), in a manner that will not preclude the ability to provide Reserve Water to implement up to 50 TAF of emergency dilution flows and/or interfere with its ability to meet its obligations under the ESA with regard to endangered suckers and/or their critical habitat." *Id.* at ¶ 13. Federal defendants and intervenors both filed timely notices of appeal.

The parties agree that while water year 2017 was comparably wet, water year 2018 has been and is expected to be drier. The parties dispute whether there is enough water for the Bureau to fulfill its obligations under the Modified Injunction Orders as well as whether such fulfillment is necessary given the current hydrological conditions. On March 7, 2018, intervenors filed this Motion for Relief from Judgment and/or Stay of Enforcement in both cases. *See* Hoopa Dkt. No. 139; Yurok Dkt. No. 101. Federal defendants have separately filed what they call a response to intervenors' motion, informing the Court of their alternative proposed plan. *See* Hoopa Dkt. No. 145-1; Yurok Dkt. No. 109-1. Plaintiffs oppose both intervenors' motion as well as federal

---

[3] The Bureau is also obliged under the ESA to meet certain criteria for sucker fish pursuant to a separate Biological Opinion.

4

1 defendants' proposed plan.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 60(b) provides that a "court may relieve a party or its legal representative from a final judgment, order, or proceeding" for certain enumerated reasons. Fed. R. Civ. P. 60(b). As the Ninth Circuit has explained, Rule 60(b) "attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done." *Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir. 2007) (citing 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2851 (2d ed. 1995)). Defendant-intervenors here invoke the reasons in subsections 60(b)(2) and 60(b)(5).

Under Rule 60(b)(2), relief may be obtained where there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). The moving party must show that (1) "the evidence relied on in fact constitutes 'newly discovered evidence' within the meaning of Rule 60(b)," (2) it "exercised due diligence to discover this evidence," and (3) the newly discovered evidence is "of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Future Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003) (internal quotation marks omitted).

Under Rule 60(b)(5), relief may be obtained where "applying [the judgment] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). "Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (citing *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992)).

**DISCUSSION**

**I.      Jurisdiction to Grant Relief from Judgment or Stay Enforcement**

Plaintiffs contest that this court has jurisdiction to grant a motion for relief from the judgment pursuant to Rule 60(b), arguing that the pending appeal has divested the court of

5

jurisdiction. Instead, they argue that the federal defendants and intervenors may only seek the relief provided by Rule 62.1. Intervenors respond that the previous injunction orders issued expressly anticipate further intervention from this Court, but Rules 62 and 62.1 provide further bases for jurisdiction.

The general rule is that "[o]nce a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed." *Nat. Resources Def. Council v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam); *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982)). As the Ninth Circuit has explained, the purpose of this rule "is to promote judicial economy and avoid the confusion that would ensue from having the same issues before two courts simultaneously." *Id.* A district court may, however, "retain[] jurisdiction during the pendency of an appeal to act to preserve the status quo." *Id.* This rule is codified in Rule 62(c).

Rule 62(c) allows a district court to "suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." Fed. R. Civ. P. 62(c). The rule "does not restore jurisdiction to the district court to adjudicate anew the merits of the case," but rather grants a "narrowly limited right of a trial court" and "is merely expressive of a power inherent in the court to preserve the status quo where, in its sound discretion, the court deems the circumstances so justify." *McClatchy Newspapers*, 686 F.2d at 734.

Where "a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending," Rule 62.1 allows a district court to "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a). Such a statement under the third option is referred to as an "indicative ruling." *See* Fed. R. Civ. P. 62.1 advisory committee's notes; *Mendia v. Garcia*, 874 F.3d 1118, 1121 (9th Cir. 2017).

The Federal Rules of Procedure are clear about what districts courts do and do not retain

jurisdiction over once an appeal is filed. Intervenors' suggestion that the Modified Injunction Orders somehow confer jurisdiction to me over this motion because they "anticipate[] that further intervention from the Court may be sought," Hoopa Dkt. No. 147 at 2; Yurok Dkt. No. 110 at 2, has no support in the law and plainly conflicts with the reasons underpinning the general rule divesting district courts of jurisdiction once an appeal is filed.

While intervenors are correct that Rule 62(c) would allow me certain limited rights to suspend, modify, restore, or grant an injunction, I may only do so in order to preserve the status quo. Because the status quo of this case is its state as of when the appeal of the injunction order was filed, intervenors' requested stay of enforcement would not preserve the status quo and is beyond the power granted to me by Rule 62(c). *See Small v. Operative Plasterers' and Cement Masons' Int'l Ass'n Local 200, AFL-CIO*, 611 F.3d 483, 495 (9th Cir. 2010) (reviewing modification of a preliminary injunction and reinstating it as originally granted so as to preserve the status quo pursuant to Rule 62(c)).

Pursuant to Rule 62.1, I am limited to deferring consideration of the Rule 60(b) motion, denying the motion, or issuing an indicative opinion to the court of appeals that I would grant the motion or that it raises a substantial issue. Because Rule 62.1 allows me at least to consider the merits of intervenors' motion, I will do so. I have authority to deny it, but I may not grant it without a remand from the court of appeals.

**II.     Motion for Relief from Judgment Pursuant to Rule 60(b)**

Intervenors move for relief from the Modified Injunction Orders on the grounds that there is newly discovered evidence pursuant to Rule 60(b)(2), and that applying the judgment prospectively is no longer equitable pursuant to Rule 60(b)(5). The federal defendants do not join in this motion, and plaintiffs oppose it.

**A. "Newly Discovered Evidence" Pursuant to Rule 60(b)(2)**

The prevalence of infection ("POI") rates for the Coho salmon were the triggers for reinitiation underlying the previous Injunction Orders. Intervenors argue that new reports and information from 2017, generated after the issuance of the Injunction Orders, demonstrate that the injunctions are not based on sound science and is unnecessary to protect Coho salmon in 2018.

They contend that the best available science now demonstrates that the POI rates underlying the Injunction Orders using the QPCR method were inaccurate, and that a new method of calculation, weighted by abundance, actually reveals that they were far lower than plaintiffs represented—18 and 29 percent, rather than 81 and 91 percent. As a result of intervenors' assertion, I ordered supplemental briefing to address whether intervenors' percentages were calculated consistently with the triggers set by the 2013 Biological Opinion ("2013 BiOp"). *See* Hoopa Dkt. No. 154; Yurok Dkt. No. 123.

In their supplemental briefing, all parties agreed that the 81 and 91 percent figures, using the QPCR method, were calculated consistently with the method set forth under the 2013 BiOp. Because the 2013 BiOp uses the QPCR method and is the current governing document defining when an incidental take occurs, the 81 and 91 percent calculations are the relevant figures for evaluating when the triggers are met. The 2013 BiOp does not provide guidance on the weighted-by-abundance metric nor establish any standard for unacceptable disease levels using it. The parties are bound by their obligation to measure the POI rates consistently with the 2013 BiOp; my previous order regarding reinitiation stands. Should the federal defendants now believe that the weighted-by-abundance metric reflects the best available science, they are strongly urged to make this change accordingly in an updated Biological Opinion as soon as possible.

Intervenors nonetheless suggest that this conclusion only relates to whether federal defendants were obligated to reinitiate consultation, not to whether the injunctions should be suspended or modified. They argue that they have offered newly discovered evidence because the weighted-by-abundance method is the more accurate metric to measure the POI rate. With more authoritative evidence that the actual POI rates were in fact 18 and 29 percent, I would be inclined to agree. But federal defendants' supplemental brief raises some important concerns about the value of these figures. They explain that the 18 and 29 percent figures "do not lend themselves to direct comparison to the 39 percent trigger for reinitiation in the Take Statement" because they "utilize different methodologies" and "are different statistical techniques." *See* Hoopa Dkt. No. 158 at 5–6; Yurok Dkt. No. 126 at 5–6 (together, "Fed. Defs.' Supp."). One key difference is that the weighted figures "examine[] one sample location," whereas the unweighted figures "utilized

8

three sample locations." Fed. Defs.' Supp. at 6. They also differ in that the weighted figures "examine[] only wild fish for 2014 and 2015," whereas the unweighted figures "examined wild and hatchery fish combined," and "[h]atchery fish tend to suffer higher infection rates than wild fish." *Id.* Federal defendants explain that if the weighted figures "had calculated POI for all fish (wild and hatchery) . . . , one would expect [them] to be higher," albeit "still significantly lower than 81 and 91 percent." *Id.* A true "apples-to-apples reanalysis" is currently not possible, however, because abundance data is not available for all three sample locations. *Id.*

Given this information, federal defendants are correct that any comparison between the weighted by abundance figures and the incidental take triggers "would not be appropriate." Fed. Defs.' Supp. at 6. Federal defendants also suggest that more data would show that the weighted figures should actually be higher. While they state that they would still be "significantly lower" than the 81 and 91 percent figures, they do not (and cannot) estimate how much lower, or whether they would still trigger the incidental take (at 49 percent). Because I cannot find that the best available science shows that the actual POI rates in 2014 and 2015 were lower than the incidental take trigger, I do not find sufficient grounds to justify suspension or modification of the injunctions.

The remainder of intervenors' arguments pertain to newly developed evidence, not "newly discovered evidence" that was nonetheless "in existence at the time of the judgment." *See Fantasyland Video, Inc. v. Cty. of San Diego*, 505 F.3d 996, 1005 (9th Cir. 2007) (affirming denial of a Rule 60(b) motion where the claimed "newly discovered evidence" pertained to facts about how the district court's judgment's affected the party's business after entry of judgment). Because this "newly discovered" evidence points to new reports and information that were developed after the date of the Injunction Orders, it may not be the basis of relief pursuant to Rule 60(b)(2).

**B. Inequity of Prospective Application Pursuant to Rule 60(b)(5)**

Intervenors may nonetheless be entitled to relief if they show that application of the Modified Injunction Orders in water year 2018 is inequitable. Rule 60(b)(5) permits consideration of "a significant change in either factual conditions or in law" that "renders continued enforcement detrimental to the public interest." *Horne*, 557 U.S. at 447 (internal quotation marks and citation

9

omitted).

While intervenors point to what they characterize as changes in factual conditions, this information only supports their argument that application of the injunctions to water year 2018 is unnecessary, not inequitable. Intervenors' argument mainly rests on the effects of the Klamath River Project on the family farms and ranches in the Project's irrigation districts. *See* Hoopa Dkt. No. 139 at 18; Yurok Dkt. No. 101 at 18. I am sympathetic to those concerns, but as I have already discussed at length in the Injunction Orders and as is very plainly the law, I am not free to favor economic or other interests over potential harm to endangered species. *See* Injunction Orders at 46; *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978) ("Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities . . . ."); *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 794 (9th Cir. 2005) ("[C]ourts may not use equity's scales to strike a different balance.") (internal quotation marks omitted); *Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1091 (9th Cir. 2015) ("[T]he equities and public interest factors always tip in favor of the protected species."). Intervenors "do not support this logic," Hoopa Dkt. No. 139 at 19; Yurok Dkt. No. 101 at 19, but it is not within my power "to adjudicate anew the merits of the case" due to the pending appeal. *McClatchy Newspapers*, 686 F.2d at 734.

Intervenors also argue that the Klamath Project water diversions provide water for two national wildlife refuges, benefitting the Pacific Flyway. Hoopa Dkt. No. 139 at 18; Yurok Dkt. No. 101 at 18 (citing Kirby Decl. [Dkt. No. 101-6] at ¶ 17; Crawford Decl. [Dkt. No. 101-4] at ¶ 1). While the national wildlife refuges are certainly important and benefit the public interest, intervenors do not provide any information (let alone new information) regarding the effects of the injunctions on the wildlife refuges that would allow me to evaluate whether application of the injunctions would be inequitable due to its effects. For these reasons, intervenors have failed to show that they are entitled to relief from the judgment pursuant to either Rules 60(b)(2) or 60(b)(5), as they have not shown any "newly discovered evidence" nor that prospective application of the Injunction Orders would be inequitable. For these reasons, intervenors' motion is DENIED.

### III. The Federal Defendants' Proposed Modifications to the Injunction Orders

Federal defendants do not join in intervenors' motion. However, they respond that full compliance with the injunctions is not possible without impermissibly harming the endangered sucker fish due to the current hydrological conditions. They instead present a voluntary proposed operations plan that they characterize as the best means of implementing the Modified Injunction Orders in water year 2018, along with a proposed order approving that plan. Plaintiffs argue that federal defendants may not implement their proposed operations plan because it is contrary to and inconsistent with the Injunction Orders, and dispute the evidence underlying their position.

The posture of this briefing is odd in that neither federal defendants nor plaintiffs have formally moved this Court for any form of relief. Federal defendants, because they recognize that plaintiffs vehemently dispute their proposed operations plan as well as its propriety under the Modified Injunction Orders, could have sought an order from this Court clarifying the Modified Injunction Orders or otherwise moved for relief. Plaintiffs could have sought a contempt order if they believed that federal defendants were not in compliance with the orders. Pursuant to my power under Rule 62(c) to preserve the status quo, I will interpret the federal defendants' brief as a request for clarification of the Modified Injunction Orders and evaluate their proposed plan's propriety.

On March 23, 2018, federal defendants contended that, given the current water flows, implementation of both Management Guidance Measures 1 (regarding winter-spring surface flushing flows) and 4 (regarding emergency dilution flows), as mandated, were not possible without impermissibly diverting water from and therefore harming the endangered suckerfish. But as a result of an intervening natural storm event, federal defendants reported on April 6 that they were able to implement Measure 1 on April 6. *See* Hoopa Dkt. No. 149; Yurok Dkt. No. 115. Because Measure 1 is no longer at issue, those portions of the federal defendants' response pertaining to it are now moot and I will not address them.

Turning to Measure 4, federal defendants "do not read" the Modified Injunction Orders as requiring partial implementation in the event that full implementation is not possible and contend that partial implementation would not further the injunctions' goal of reducing disease infection

11

rates. *See* Hoopa Dkt. No. 145-1 at 9, 16; Yurok Dkt. No. 109-1 at 9, 16. They instead suggest foregoing implementation of Measure 4 entirely. By foregoing Measure 4, the Bureau will also avoid a complete shutoff of irrigation deliveries that may result from partial implementation of Measure 4, and will be able to provide a total of 252,000 acre feet of water to the irrigation districts. *See id.* at 18.

Federal defendants' suggestion that they forego any attempt at all to comply with Measure 4 is clearly inconsistent with the Injunction Orders. Given the pending appeal, it is beyond my power to grant approval of their proposed plan. Even if it were within my power, I would deny it because federal defendants have not shown why so-called partial compliance is preferable and more consistent with the Modified Injunction Orders should full compliance not be possible.

Although federal defendants claim that they cannot implement a full 50 TAF emergency dilution flow under Measure 4 by April 1, as the injunctions mandate, they concede that they would be able to do so by May 20. *See* Hoopa Dkt. No. 149-1 at 2; Yurok Dkt. No. 105-1 at 2. They further state that, under their modeling, they will likely be only 3 TAF shy of the full 50 TAF to implement a flow event on April 30. *See* Hoopa Dkt. No. 149-1 at 3; Yurok Dkt. No. 105-1 at 3. Federal defendants argue that such partial implementation would not provide the population-level disease benefits; they propose foregoing Measure 4 entirely. The FWS Technical Memo on which they base their argument, however, merely states that there are "uncertainties" regarding the potential effectiveness that have admittedly been "previously discussed." FWS Technical Memo at 5. But whether the effects of the dilution flow can be accurately predicted because of the relative lack of high flow events since disease sampling began, for example, does not mean that a dilution flow would be ineffective or speak to its effectiveness at all. Nor does the fact that water released from the Iron Gate Dam might not generate the same proportional increase in discharge at lower river sample states mean that the discharges would be ineffective. Each of federal defendants' concerns merely raises questions but does not provide evidence that Measure 4 would not achieve its goals.

These arguments do not focus on the effectiveness of *partial* implementation, but rather raise the same concerns regarding Measure 4 in its entirety that were raised and considered prior to

the Injunction Orders. This is underscored by federal defendants' statement that they object to the implementation of Measure 4 "either in whole or in part." *See* Hoopa Dkt. No. 149-1 at 3; Yurok Dkt. No. 105-1 at 3. Federal defendants' arguments are no more convincing today than they were at the time of the Injunction Orders; even if they were, it is beyond my power at this stage to grant their proposed plan as it would substantially alter the status quo.

In the event that full compliance is not possible, I clarify that the Injunction Orders demand partial compliance. The Orders specifically state that "[t]he Bureau shall manage the Klamath Reclamation Project ("Project"), including Project deliveries from upper Klamath Lake ("UKL"), in a manner that will not preclude the ability to provide Reserve Water to implement *up to* 50 TAF of emergency dilution flows and/or interfere with its ability to meet its obligations under the ESA with regard to endangered suckers and/or their critical habitat." Modified Injunction Orders at ¶ 13 (emphasis added); *see also id.* at ¶ 14(c) ("Emergency dilution releases using up to 50 TAF of Reserve Water shall be implemented . . . ."). The Modified Injunction Orders thus recognizes that fewer than 50 TAF of Reserve Water may be necessary in order to reach the specified flow targets, and depending on the environmental conditions, the objectives of Measure 4 might still be fully implemented despite the difficult hydrological conditions. Thus, simply because federal defendants cannot meet the 50 TAF recommendation by April 1 does not mean that they should forego maintaining any Reserve Water at all.

Moreover, the Orders also presents federal defendants' duty to implement Measure 4 as an ongoing obligation: "Each year this plan is in effect, the Bureau shall establish a 50,000 acre foot ("50 TAF") Reserve Water ("Reserve Water") supply to implement the emergency dilution flows modeled on Management Guidance #4 as described in paragraph 14 herein. Reserve Water shall be available from April 1 through the earlier of the two cessation dates identified . . . ." Modified Injunction Orders at ¶ 12. Partial compliance is clearly the Bureau's obligation under the injunctions and aligns with the injunctions' goals of protecting the species and providing emergency dilution flows in the event that certain disease levels are reached.

Federal defendants' proposed alternative plan is clearly at odds with the injunctions and their objectives. As discussed at length in the Injunction Orders, the injunctions prioritizes first

13

and foremost the wellbeing of the endangered species (both the Coho salmon and the sucker fish to the extent that they are affected), then the federally-protected rights of the tribes, and finally the rights of the irrigation districts. Federal defendants have not shown that so-called partial implementation cannot meet the objectives of the injunctions, nor that even some lesser amount of Reserve Water would provide no benefits. Because the injunctions demand partial compliance in the event that full compliance is not possible, federal defendants' proposal of releasing water to the Project is clearly inconsistent with their duties. Under the injunctions, they are not permitted to release any water to the irrigation districts that could be instead used to implement Measure 4, even if only partially.

With respect to full compliance, plaintiffs argue that federal defendants have presented incomplete modeling, and that full compliance with both Measures 1 and 4 may be possible given the supplemental water available to implement Measure 1. Plaintiffs point out that federal defendants' models, underlying their contention that it is impossible to fully comply with both Measures 1 and 4 without endangering the sucker fish, do not take into consideration the available non-Project water. *See* Hoopa Dkt. No. 146 at 21 (discussing Hoopa Dkt. No. 145-5, at 9–10, 15). The federal defendants present no model that shows the outcome with respect to Measure 4, assuming the use of non-Project water to fulfill Measure 1. Instead, they only take into consideration the non-Project water in their models of supporting their proposed plan, by which they would forego compliance with Measure 4 entirely. *See* Hoopa Dkt. No. 146 at 22 (discussing Hoopa Dkt. No. 145-5, at 13). Given that federal defendants appear not to have modeled outcomes assuming use of non-Project water to fulfill Measure 1, their contention that it is impossible to fulfill both measures seems unfounded. Regardless, under the Modified Injunction Orders and as clarified by this Order, federal defendants must fulfill their duty at least to attempt full compliance with Measure 4.

Finally, I address plaintiffs' suggestion that the Bureau of Reclamation may have mismanaged its fall/winter water deliveries, thereby failing to comply with their duty to manage the Klamath Project deliveries from Upper Klamath Lake "in a manner that will not preclude the ability to provide Reserve Water to implement up to 50 TAF of emergency dilution flows and/or

interfere with its ability to meet its obligations under the ESA with regard to endangered suckers and/or their critical habitat." Modified Injunction Orders at ¶ 13. Because of the disposition of these proceedings, I will not require the Bureau to provide the modeling showing the water levels with and without those deliveries at this time. However, the Bureau of Reclamation is reminded of its duties and obligations under the Modified Injunction Orders and should be prepared to defend with evidence the scientific bases of their decisions should they come into question at a later time.

## CONCLUSION

For the foregoing reasons, intervenors' Rule 60(b) Motion for Relief from the Judgment is DENIED. This Order clarifies that the Modified Injunction Orders demand partial compliance if full compliance is not possible, as is consistent with preserving the status quo pursuant to Rule 62(c).

**IT IS SO ORDERED.**

Dated: August 30, 2018

William H. Orrick
United States District Judge